[Crim. No. 1261. Third Appellate District.—June 30, 1933.]

THE PEOPLE, Respondent, v. CHESTER ARNEST et al., Appellants.

116

K. D. Robinson and A. K. Robinson for Appellants.

U. S. Webb, Attorney General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

PLUMMER, J.—The defendants were convicted of grand theft and of burglary in the second degree, upon an information in two counts charging them with the two offenses, in the following language, to wit: "That on or about the 30th day of August, 1932, in the county of Placer, state of California, they did then and there wilfully, unlawfully and feloniously steal and take the following described property, to-wit: 9 cases of cigarettes, of the reasonable and fair market value of $576.00, which said cases of cigarettes were then and there in the possession of the Southern Pacific Company, a corporation, as bailee, in a certain railroad car, Southern Pacific No. 25362, which car was in train No. 486, prosecuting its trip through the counties of Placer and Nevada, state of California, and which said cases of cigarettes were at the said time the personal property of another, and not the property of the defendants, with the felonious intent then and there to commit the crime of grand theft."

Count 2 of the information, in its charging part, reads as follows: "That on or about the 30th day of August, 1932, in the county of Placer, state of California, they did then and there wilfully, unlawfully and feloniously enter a certain railroad car, to-wit: Southern Pacific No. 25362, which said railroad car was then and there in train No. 486, and prosecuting its trip through the counties of Placer and Nevada, state of California, with the intent then and there to commit the crime of grand theft."

The defendant Worth was further charged with a prior offense, as follows: "That the defendant Alfred L. Worth, before the commission of the offenses charged in this information, was, in the superior court of the state of California, in and for the county of Tuolumne, convicted of the crime of petty theft."

Upon arraignment, the defendants demurred to the information on the ground that it did not conform to the requirements of sections 950, 951 and 952 of the Penal Code;

that the court had no jurisdiction of the offense charged; that the facts stated do not constitute a public offense; and that more than one offense is charged other than as provided in section 954 of the Penal Code. At the same time the defendants moved to set aside the information on the following ground: That before the filing thereof, the defendants, nor either of them, had been legally committed by a magistrate. The demurrers were overruled, and the motion denied, whereupon the defendants entered a plea of not guilty.

█ It appears that during the course of the trial the district attorney was permitted to amend the information by inserting the words ''which said railroad car was then and there in train No. 486, and prosecuting its trip through the counties of Placer and Nevada, state of California''.

The original information is not made a part of the record, but there appears to be no contention on the part of the respondent that the original information did not allege that the car was in a train prosecuting its trip through the counties referred to.

By section 783 of the Penal Code it is provided that where an offense is committed in this state on a railroad train or car prosecuting its trip, the jurisdiction is in any county through which the train or car passes in the course of its trip, or in the county where the trip terminates. Under this section it is legally correct to state that the offense was committed in the county of Placer, under the circumstances disclosed by the record in this case, and it shows that it was committed upon a car which was a part of the train prosecuting its trip through the counties of Placer and Nevada, on its way to Sparks, in the state of Nevada. Under such circumstances, as provided in section 1008 of the Penal Code, the amendment only clarified the language used, and more specifically identified the offense so that the defendants, if convicted, might not again be prosecuted for the same crimes. This question was before the court in the case of *People* v. *Dougherty*, 7 Cal. 395, and it is there said: ''The extra territorial jurisdiction thus conferred (referring to section 89, page 434, Compiled Laws) upon the courts of the various counties situated upon the navigable waters of the state, is special in its character and in deroga-

tion of the common law rule upon this subject; and whenever it is invoked, the facts and circumstances should be set out fully in the indictment. In this respect the court may be considered as exercising a special and limited jurisdiction, and the facts which give jurisdiction must be clearly alleged and satisfactorily proved. There is great reason for this rule, for if these allegations can be dispensed with, then the defendant might be indicted, tried and convicted, in every county through which a vessel might pass in making a voyage, and one conviction or acquittal would be no bar to another prosecution, as it would be impossible to determine that they were for one and the same offense.''

At the time of the rendition of this decision, there was no provision in the Penal Code authorizing district attorneys to submit, and the court to allow, amendments as provided for in section 1008, *supra*. As now amended, that section, so far as material here, reads: ''The court may order its amendment for any defect or insufficiency at any stage of the proceedings, and the trial shall continue as if it had been originally filed as amended, unless the substantial rights of the defendant would be prejudiced thereby, in which event the reasonable continuance, not longer than the ends of justice require, may be granted.''

It thus clearly appears from the case relied upon by the appellants from which we have just quoted, that the amendment to the information was not to the prejudice of the defendants, but is an amendment which operates in their favor, for the simple reason that it estops further prosecution for the offenses charged in other counties through which the train passed in prosecuting its trip through the state of California.

The record further shows that no continuance was asked for; that the defendants stated they were content to rest upon their original plea, and the trial proceeded as though the information had originally read as it stood amended. Amendments to informations have been so frequently allowed where it appears that no prejudice has been suffered by the defendants that it seems to us unnecessary to encumber the record with citation of the cases where such amendments have been allowed.

One case, however, which permitted the addition of an allegation supplying a jurisdictional fact, may be referred

to. In *People* v. *Bonfanti*, 40 Cal. App. 614 [181 Pac. 80], the information charged an assault with intent to commit rape but failed to state that the victim was not the wife of the defendant. The proof establishing such fact, the amendment was allowed. The nature of the offense was not changed. Just as here, the nature of the offense, nor any of the conditions relating thereto, were unchanged by the amendment. The court had jurisdiction, the testimony established the fact of jurisdiction in showing that the burglary and larceny took place under such conditions as to give the court jurisdiction, and all that remained, assuming that the original information was defective, was the adding thereto such words as would prevent any other prosecution upon the charges contained in the information. The defendants were not faced with any different charge, nor did it necessitate on their part any additional effort to meet the allegations of the information. They were charged with burglarizing and committing larceny of a certain railroad car, etc. The only allegation in substance contained in the amendment to the information showed that the car was in motion or prosecuting a trip through the counties mentioned. We may also refer to the case of *Johnson* v. *Johnson*, 30 Colo. 402 [70 Pac. 692], where the Supreme Court of Colorado held that where the testimony showed jurisdiction, the pleadings might very properly be amended to conform to the proof, and that they had found no well-considered case to the contrary. The facts of the case are as follows: The car upon which the burglary was committed and also in which the larceny was committed was in a train, as we have stated, being moved from Roseville, California, to Sparks, Nevada, passing through Placer and Nevada Counties. A watchman or railroad detective was stationed on a car two car-lengths in the rear of the one burglarized. When the train stopped at Emigrant Gap the seals on the burglarized car were then intact, or appeared to be intact, and the doors were closed. A short time after the train left Emigrant Gap, the railroad detective observed packages being thrown from the car in question. He immediately dismounted from the train, concealed himself in the weeds and grass along the right of way, and in a short time one of the defendants appeared and picked up one of the packages. Thereupon he was arrested by the detective. The

detective waited until the second defendant came along carrying a sack and a rope ladder, whereupon he was also arrested.

The record shows that nine packages of cigarettes were recovered of those thrown from the train, although the testimony also shows that the eleven packages of cigarettes were thrown out of the car. The defendants were then arrested and taken to Auburn, where their preliminary examination was held. The testimony developed that the place where the packages of cigarettes were found was in the county of Nevada, and distant from the boundary line between the counties of Placer and Nevada about 2,900 feet.

We may now consider the motion to set aside the information on the ground that the defendants had not been legally committed. A complete answer to the alleged error on the part of the court in denying this motion is in the entire want of the record to exhibit either the complaint filed before the justice of the peace in Auburn and the testimony there taken. All that the record shows is simply the motion.

In the case of *People* v. *Williams*, 84 Cal. 616 [24 Pac. 145], a somewhat similar question was presented as to the jurisdiction of the police judge conducting the preliminary examination. The court there said: ''We must presume, in the absence of anything showing the contrary in favor of the action of the court below, that some duly qualified magistrate had, previous to the trial in the Superior Court, properly committed the defendant for such trial, but who he was does not appear, for it will not be taken for granted that the facts set up in the defendants' motion are true without any proof as to the matter.'' This case was affirmed in *People* v. *Hinshaw*, 194 Cal. 1 [237 Pac. 156], where it is again held that proof must be made of whatever is set up in the motion, and that the motion itself does not constitute sufficient grounds setting aside the information.

For all that appears in the record, the facts giving the justice of the peace at Auburn jurisdiction appeared in the complaint and in the testimony, and nothing appearing in the record to the contrary, we must presume that the trial court was justified by the showing made before it to deny the appellants' motion.

■ Under section 783, *supra,* jurisdiction of the offenses shown in the record lay in both the counties of Placer and Nevada. The train on its way eastward passed through the township where the city of Auburn is situate. The offense, as shown by the record, was a continuing offense. It was, in view of the section of the Penal Code which we are considering, committed in every county of the state through which the car was being transported, and therefore it was committed within the territorial limits of every township through which it passed, giving jurisdiction to the justice of the peace of such township to hold a preliminary examination.

■ The appellants make the further objection that under the provisions of section 849 of the Penal Code which reads: ''When an arrest is made without a warrant by a peace officer or private person, the person arrested must, without unnecessary delay, be taken before the nearest or most accessible magistrate in the county in which the arrest is made,'' etc.; and that the arresting officer in this case should have taken the appellant before some magistrate in the county of Nevada.

So far as the record is concerned it does not appear that this objection was raised, or any advantage taken of the provisions of this section prior to the beginning of the trial in the superior court. From what we have stated, it is evident that the justice of the peace at Auburn had jurisdiction to hear the preliminary examination of the defendants charged with the offenses alleged in the information. That the arresting officer may have committed a wrong against the appellants does not affect the jurisdiction of the justice of the peace at Auburn. If any injury was suffered by reason of the failure of the arresting officer to comply with section 849, *supra,* it is left undisclosed by the record, which is, as we have stated, entirely silent concerning proceedings had upon the preliminary examination of the appellants.

In addition to the testimony which we have stated with regard to the railroad detective seeing the packages of cigarettes thrown from the car, and the return of the defendants to pick up the cigarettes, we may refer to the testimony of the witness J. R. Martin. After testifying that the ''railroad officer'' came to the work car where he was with the two prisoners, and placing them in his charge

while the officer went back with a handcar to pick up the packages of cigarettes, the following conversation took place between him and the defendant Worth, in the presence of the defendant Arnest: "The defendant Worth said to me: 'What kind of cigarettes do you smoke?' I said, 'Chesterfield's.' He said, 'They found nine cases of cigarettes. I threw out eleven cases. I don't think you will have to change the brand. After we start to Auburn, you go down and get the cigarettes.' The defendant Worth then asked Arnest if the officer caught him with the packages or cartons, it was, in his possession. Arnest says, 'Yes.' He says, 'You can't swear that he didn't.' Arnest says, 'No.' Worth says, 'You know what that means; that means five years if they prove that.' " The witness further testified that that was the extent of the conversation; that the defendants were engaged in further conversation between themselves but he did not hear it. This witness was an employee of the department of public works, division of highways.

As we read appellants' brief, no contention appears to be made that the testimony is insufficient to show the burglarizing of the car in question and the larceny of the cigarettes.

██ It is further objected that the court erred in giving two instructions to the jury, the first of which reads as follows: "The jury is instructed that in order to constitute the crime of theft, the goods taken must be taken or severed from the possession or custody of the owner or the bailee, and be in the possession of the thief, although it be but for a moment; that they need not be retained in possession of the thief, nor removed from the owner's possession. Any removal, however slight, of the entire article, is sufficient to constitute the crime of theft." This instruction is not correctly worded. The word "possession" following the word "owner's" should have read "premises" or "presence". In this case the cigarettes were not removed from the owner's premises as they lay upon the railroad right of way where they were admittedly thrown by the defendants. Under the testimony which we have stated, and against which no objection is made by the appellants as not being sufficient to show both the burglary and the theft, we think that section 4½ of article VI of the Constitution applies. The jury was not misled. They had heard the testimony

as to the cigarettes being thrown from the car in which they were being transported. That established the theft. The mere fact that the cigarettes were not removed from the premises belonging to the railroad company was an unnecessary element in the commission of the crime, and we cannot very readily conceive how the jury understood the instructions as meaning other than that the defendants, in the complete commission of the offense, were not required to take the cigarettes entirely off of the railroad right of way.

It is further contended that the court erred in its instructions as to what constituted larceny in that it omitted the word "feloniously". The whole instructions should be read together, which shows that the court charged the jury that they must be convinced to a moral certainty, and beyond a reasonable doubt, that the defendant Chester Arnest "did, on the 30th day of August, 1932, feloniously steal the personal property of another, as alleged in the information"; and then define "grand" and "petty theft" as given in the statute, which, of course, was neither misleading nor erroneous.

The judgment in this case, however, is erroneous and unwarranted in one particular in so far as it adjudges the defendant Alfred L. Worth with a prior conviction, etc. The information, as we have stated, simply charges the defendant Worth with having been convicted of the crime of petty theft.

Section 666 of the Penal Code reads: "Every person who, having been convicted of petty larceny or petty theft, and having served a term therefor in any penal institution, commits any crime after such conviction, is punishable as follows:" The defendant Worth simply pleaded guilty to the information, couched in the language which we have set forth. This of course is not sufficient compliance with the statute in order to lay a basis for the imposition of an additional sentence or an added length of time for which the defendant may be sentenced. The information must charge that the person convicted has served a term therefor, and if it fails to do so, it fails to charge the facts necessary to constitute a judgment carrying a heavier sentence. This is definitely established by the decision in the case of *People* v. *Dawson,* 210 Cal. 366 [292 Pac. 267]. This being true,

that portion of the judgment relating to the prior conviction of the defendant Worth, and seeking to lay the basis for an addition to the sentence which may be imposed upon him, is reversed. In all other particulars the judgments and orders denying appellants' motion for a new trial are affirmed.

Thompson, J., and Pullen, P. J., concurred.