[Crim. No. 1092.   Fourth Dist.   Nov. 20, 1956.]

THE PEOPLE, Respondent, v. BILL G. LOCKWOOD,
Appellant.

Leroy S. Hulden, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, William E. James, Deputy Attorney General, for Respondent.

BARNARD, P. J.—The defendant was charged in a complaint filed in the municipal court with having committed the crime of armed robbery on June 26, 1956. He was also charged with two prior convictions. As to the first, it was charged that on December 18, 1952, he was convicted in the superior court of San Diego County of the crime of robbery and "committed to the California Youth Authority at Lancaster." As to the second, it was charged that on February 4, 1955, he was convicted in the superior court of San Diego County of the crime of second degree robbery and "committed to the California Youth Authority at Lancaster." The defendant pleaded guilty in the municipal court and was certified to the superior court for further proceedings. In the superior court he again pleaded guilty to the main charge, admitted that he was armed at the time, and admitted the two prior convictions as charged. In its judgment sentencing the defendant to state prison the court found and adjudged that the degree of the offense was robbery in the first degree; that the defendant was armed at the time of its commission; that he had been previously convicted of the crime of robbery and had served time therefor in a state prison; that he had been previously convicted of robbery of the second degree and had served time therefor in a state prison; and that he is an habitual criminal.

The defendant has appealed from that part of the judgment which finds and adjudges him to be an habitual criminal. The question presented is as to whether or not the record with respect to the two prior convictions, as alleged and as admitted by the appellant, is sufficient to show that he is a person who has been twice convicted and has served separate terms therefor in a state prison, within the meaning of section 644, subdivision (a), of the Penal Code. Incidentally, it may be observed that while the record shows that he was twice committed to the Youth Authority at Lancaster there is nothing in the record to show that he was ever delivered to that institution or that he served any term there. The main question presented, however, is as to whether or not the California Vocational Institution at Lancaster is a state prison within the meaning of section 644, subdivision (a), of the Penal Code.

This particular question has never been decided although it has been held, with respect to certain institutions in other jurisdictions, that the fact that the institution was called a reformatory or the fact that it had some reformatory purpose

was not controlling, and that a term served in that institution could be considered a term served in a prison within the meaning of our statute. (*In re Gilliam*, 26 Cal.2d 860 [161 P.2d 793] ; *People* v. *Stein*, 31 Cal.2d 630 [191 P.2d 409].) In the first of these cases the court said that ''it is the character of the institution and its inmates together with the nature of the proceedings leading to confinement therein which determine its status in relation to the language of'' our statute, referring to section 644 of the Penal Code. As to the second part of this test, the nature of the proceedings leading to confinement, the proceedings here in question were distinctly criminal in nature the appellant having been in each instance convicted of robbery and committed to the youth authority in the superior court and not in a juvenile court proceeding. The other part of this test, the character of the institution and its inmates, involves a consideration of our particular statutes in order to determine whether it was intended that a term served in this institution at Lancaster should be considered as a prison term within the meaning of section 644, subdivision (a).

Section 2036 of the Penal Code provides that this institution ''shall be an intermediate security type institution. Its primary purpose shall be to provide custody, care, industrial, vocational and other training, guidance and reformatory help for young men, too mature to be benefited by the programs of correctional schools for juveniles and too immature in crime for confinement in prisons.'' Section 2037 provides that under certain circumstances persons may be transferred to this institution by the Director of Corrections or the youth authority, and that under certain circumstances the transfer of any person to this institution by the youth authority shall not be deemed to constitute a conviction of a crime. It then further provides that section 644 of the Penal Code shall apply to any person who has served a term in this institution after transfer thereto by the adult authority. A distinction is thus made between a transfer to this institution made by the adult authority and one made by the youth authority. These sections have an important bearing on the character of this institution and strongly indicate that it was not intended to make the service of a term therein equivalent to a term in prison, except where the person was transferred thereto by the adult authority.

A similar intention is indicated by certain sections of the Welfare and Institutions Code in the division governing the organization and operation of the youth authority. Section

1700 provides that the purpose of that authority is to protect society more effectively by substituting methods of rehabilitation for retributive punishment, in the case of young persons found guilty of public offenses. Section 1738 provides that a court may commit a person to the authority generally, or to a particular place established by the authority. Section 1762 provides that the authority shall reexamine all persons within its control at least once a year for the purpose of determining whether existing orders and dispositions should be continued in force or modified. Section 1772 provides that every person honorably discharged from control by the youth authority who has not, during its period of control, ''been placed by the Authority in a state prison,'' shall thereafter be released from ''all penalties and disabilities'' resulting from the crime for which he was committed. Sections 1780 to 1782 provide that under some circumstances a person who has been discharged from control by the authority may be sentenced to prison by a court, with credit being given for the time he was under the control of the authority. Section 1737.1 provides that whenever a person has been convicted of a public offense and committed to the authority, and the authority finds either then or later that he is an improper person to be retained in such an institution, the authority may return him to the committing court and said court may then commit him to a state prison or a county jail, as the case may warrant. In *People* v. *Scherbing,* 93 Cal.App.2d 736 [209 P.2d 796], it was held that the youth authority has power under certain conditions and under other statutes to place such a person in a prison, and that the provision of section 1737.1 that it ''may'' return him to the committing court for that purpose is not exclusive.

These various statutes indicate that it was not intended by the Legislature that such a commitment to the youth authority as appears in the prior convictions here in question, and the service of a term thereunder in this institution, should constitute the service of a term in prison within the meaning of section 644, subdivision (a), of the Penal Code. It follows that the court erred in finding that this appellant had served a term in a state prison in connection with each of these prior convictions, and in finding that he is an habitual criminal.

No good reason appears for ordering a new trial of the matter of the prior convictions here involved, or for ordering the appellant returned to the trial court to be resentenced. (*People* v. *Morton,* 41 Cal.2d 536 [261 P.2d 523]; *People* v.

*Foster,* 3 Cal.App.2d 35 [39 P.2d 271] ; *People* v. *Arnest,* 133 Cal.App. 114 [23 P.2d 812].)

The judgment is reversed insofar as it adjudges that the appellant had twice served a term in a state prison on previous convictions of the crime of robbery and that he ''is an habitual criminal.'' In all other particulars the judgment is affirmed.

Griffin, J., and Mussell, J., concurred.